USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 3/8/2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DEREK PRESTON JONES,

                Plaintiff,

v.

BLOOMINGDALE'S,

                Defendant.

17-CV-1974 (RA)

MEMORANDUM OPINION AND ORDER

RONNIE ABRAMS, United States District Judge:

Derek Jones, proceeding *pro se*, brings this suit against Bloomingdale's, Inc., asserting claims for discrimination on the basis of his race, sex, and other characteristics under federal, state, and local laws. Defendant moved to dismiss, and Plaintiff responded. For the reasons that follow, Defendant's motion is granted. In light of Plaintiff's *pro se* status, however, Plaintiff is also granted leave to file an amended complaint. All amendments to the complaint must be made in good faith, and Plaintiff must file the amended complaint by April 9, 2018. If Plaintiff fails to file an amended complaint by that date, this case will be dismissed with prejudice.

## BACKGROUND

**I.    Factual Background**

The following facts are drawn from the complaint and the EEOC Intake Questionaire that Plaintiff attached to the complaint. These facts are assumed to be true for the purposes of resolving Defendant's motion to dismiss. *See Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 35 (2d Cir. 2017).

In October 1998, Derek Jones was hired as a sales associate at Bloomingdale's. He worked there without incident for five years. Sometime around 2004, a woman named Bea Bagdziunas became the head of the store's HR department. Jones alleges that she "just did not like black

people in general" and that she had a problem with him because he is a black male. According to Jones, Bagdziunas started harassing him and "slandering [his] name throughout the store to management and sales associates." He alleges that she made him "take a drug test" at some point and "continued to harass" him after the test came back negative. The following year, she required Jones to prove that he was an American citizen. Jones further alleges that Bagdziunas "had managers try to set [him] up for customer complaints" and that she tried to suspend him without pay after he had a disagreement with his manager. At some point, a manager told Jones that "they love to destroy the brothers," meaning black men.

On October 8, 2009, Jones resigned from his position at Bloomingdale's. He alleges that, since then, he has been "apply[ing] for jobs weekly" and he "get[s] rejected because" of negative references from Bloomingdale's. He asserts that Bloomingdale's has been "slandering [his] name" to other employees and that they have "made it very very hard for [him] to get a job within the last six years."[1]

## II. Procedural History

On October 28, 2015, Jones completed an EEOC Intake Questionnaire, in which he indicated that he wanted to file a charge of discrimination on the basis of race against Bloomingdale's. In January 2017, the EEOC provided Jones with a Notice of Dismissal and Right to Sue.

Jones thereafter filed this lawsuit against Bloomingdale's. In the complaint, he asserts violations of Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act of

---

[1] Jones uses identical "within the last six years" language in both his 2017 complaint and his 2015 EEOC Intake Questionnaire (in fact, both documents contain an entire identical attached page of allegations). Given that Jones left Bloomingdale's in 2009, the language appears to refer to the six years before he submitted his EEOC form (2009 to 2015), rather than to the six years before he filed the complaint (2011 to 2017).

2

1990, the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"). He identifies the failure to promote him, unequal terms and conditions of his employment, and harassment as the discriminatory conduct of which he complains. He further asserts that the alleged discrimination was based on his race, color, and gender/sex.

Bloomingdale's now moves to dismiss the complaint, arguing that Jones's claims are untimely, unexhausted, and otherwise insufficiently pled. In Jones's opposition papers, Jones alleges facts not included in the complaint. For the first time, he alleges that his "failure to promote" claim was based on an incident in which a Bloomingdale's "shop manager" position became open but was never posted because a man named David Fisher forced the company to hire his sister-in-law. For that reason, Jones alleges, "no one had the opportunity to apply for that job in that department." He also alleges for the first time that "Ms. Bagdziunas made it known that they wanted to eliminate the positions of Black individuals[,] particularly Black Men." His response also includes new facts about his failure to get a job after he left Bloomingdale's:

> After obtaining no help from my union, I decided to leave Bloomingdales . . . . However, after interviewing at countless retailers, . . . I noticed a pattern. The interview process would progress only to the point when references were requested. After further investigation, it turned out that Bloomingdales had been the primary if not the only reference called. . . . [T]he interviews would always go well[, but] when they would call Bloomingdales my name and character would get slandered.

As support for these accusations, he attaches to his opposition papers a handwritten list of the employers that have rejected him over the years.

Finally, Jones contends in his opposition papers that the delay between his resignation and the filing of his claim was "due to health issues that [he] needed to address and prioritize" and that he had not realized that his "case may be feasible" until some unidentified time when he was allegedly informed of his case's merit by the Westside Campaign Against Hunger.

3

## LEGAL STANDARD

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). On a Rule 12(b)(6) motion, the question is "not whether [the plaintiff] will ultimately prevail," but rather "whether his complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 529–30 (2011) (internal quotation marks omitted). In answering this question, the Court must "accept[] all factual allegations as true, but giv[e] no effect to legal conclusions couched as factual allegations." *Stadnick*, 861 F.3d at 35 (quoting *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010)). This Court must construe a *pro se* plaintiff's pleadings liberally. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). But even *pro se* litigants must still "state a claim to relief that is plausible on its face." *Mancuso v. Hynes*, 379 Fed. App'x 60, 61 (2d Cir. 2010) (citations omitted).

## DISCUSSION

### I. Federal Claims for Discrimination on the Basis of Race, Color, and Sex

Jones asserts that Defendant violated Title VII by harassing him, not promoting him, and subjecting him to unequal terms and conditions of employment while he worked at Bloomingdale's. He further contends that, after he left Bloomingdale's, the company continued

4

to "slander[]" his name and give negative references to other potential employers for six years, allegedly preventing him from obtaining a new job.

**A. Workplace Discrimination under Title VII**

The first set of Plaintiff's claims are based on alleged discrimination during his employment at Bloomingdale's, which undisputedly ended in 2009. Defendant argues that these Title VII workplace discrimination claims must be dismissed because they were not exhausted with the EEOC in a timely manner. Before plaintiffs may bring Title VII claims in federal court, they must exhaust their administrative remedies by filing an employment discrimination charge with the EEOC. *See Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 384–85 (2d Cir. 2015); *see also* 42 U.S.C. § 2000e-5(e). "An employment discrimination claim must be filed with the EEOC within 300 days of the alleged discrimination in a state, like New York, with a fair employment agency." *Francis v. Blaikie Grp.*, 372 F. Supp. 2d 741, 746 (S.D.N.Y. 2005) (citation omitted), *aff'd*, 177 F. App'x 121 (2d Cir. 2006). This "administrative exhaustion requirement applies to *pro se* and counseled plaintiffs alike," and is subject to equitable defenses such as tolling. *Id.* "[T]he burden of pleading and proving" that plaintiffs have not properly exhausted their Title VII claims "lies with defendants and operates as an affirmative defense." *Hardaway v. Hartford Pub. Works Dep't*, 879 F.3d 486, 491 (2d Cir. 2018). Affirmative defenses may be considered on a motion to dismiss "only where the defense appears on the face of the pleading and the documents incorporated therein." *Levine v. Columbia Labs., Inc.*, No. 03 CIV. 8943 (LAK), 2004 WL 1392372, at *1 (S.D.N.Y. June 22, 2004).

Here, Defendant argues that Plaintiff's workplace discrimination claims were not timely exhausted because the face of the complaint and the EEOC Intake Questionnaire attached to it show that Plaintiff quit his job in 2009 and did not attempt to file an EEOC charge until October

2015, well over 300 days later.[2] There is no reason on the face of the complaint and EEOC questionnaire to think that Jones has an adequate excuse for this six-year delay.

In his opposition to Defendant's motion to dismiss, Jones contends for the first time that "[t]he claim was filed late due to health issues that [he] needed to address and prioritize" and that he did not realize that his "case may be feasible" until some unidentified time when he met with an organization called the "Westside Campaign Against Hunger." Liberally construed, Plaintiff appears to be making an argument for equitable tolling. The doctrine of equitable tolling applies "only in rare and exceptional circumstances" where a party "has been prevented in some extraordinary way from exercising his rights." *Francis*, 372 F. Supp. 2d at 747 (citation omitted). To determine whether equitable tolling is appropriate, "a district court must consider whether the person seeking application of the equitable tolling doctrine (1) has 'acted with reasonable diligence during the time period she seeks to have tolled,' and (2) has proved that the circumstances are so extraordinary that the doctrine should apply." *Zerilli-Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74, 80–81 (2d Cir. 2003). There is some disagreement in this District about whether facts supporting equitable tolling must be pled in the complaint itself, or whether they can be raised in opposition to a motion to dismiss. *Compare Mira v. Kingston*, 218 F. Supp. 3d 229, 236–37 (S.D.N.Y. 2016), *with Guo v. IBM 401(k) Plus Plan*, 95 F. Supp. 3d 512, 527 (S.D.N.Y. 2015).

---

[2] Defendant in its motion papers assumes that the EEOC Intake Questionnaire here counts as an EEOC "charge." The Court will do the same, because the Questionnaire here states Jones's intent to file a charge of discrimination and Defendant has not pointed to any regulatory deficiency that would preclude the questionnaire from acting as a charge. *See Anderson v. City of New York*, No. 16-CV-1051 (GBD) (KHP), 2017 WL 3251603, at *3 (S.D.N.Y. July 31, 2017) ("The filing of an EEOC Intake Questionnaire . . . may constitute a charge for the purposes of bringing a Title VII claim . . . if it is 'reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee.'" (citation omitted)); *see also Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 402 (2008).

Even under the more lenient standard permitting Plaintiff to raise new facts in his opposition papers, however, Jones has failed to allege facts "provid[ing] the Court with some reason to believe that [he] might have been incapable of filing a charge with the EEOC until [he] finally did so." *Mira*, 218 F. Supp. 3d at 237. Jones's assertions that he asked his union about his claims and that he belatedly discovered his claims' viability do not establish reasonable diligence during the nearly six-year period between when Jones left Bloomingdale's and when he submitted his EEOC questionnaire. Moreover, the requirement to file an EEOC charge is "not tolled or delayed pending the employee's realization that the conduct was discriminatory unless the employee was actively misled by his employer, he was prevented in some extraordinary way from exercising his rights, or he asserted his rights in the wrong forum[.]" *See Miller v. Int'l Tel. & Tel. Corp.*, 755 F.2d 20, 24 (2d Cir. 1985). Thus, Jones's ignorance of the merits of his claims and his union's alleged failure to advise him about them also do not rise to the level of extraordinary circumstances that justify tolling. *Cf. Francis*, 372 F. Supp. 2d at 748 (holding that neither "ignorance of [the] ability to file a charge with the EEOC" nor a plaintiff's attorneys' "alleged failure to return" documents and provide advice justified tolling).

Jones's assertion of unspecified "health issues" is similarly "insufficient for equitable tolling purposes," because Jones has not alleged facts indicating that his illness so incapacitated him that he was "unable to protect [his] legal rights because of an overall inability to function in society." *Mira*, 218 F. Supp. 3d at 236–37 (citation omitted). Jones himself admits—in both his complaint and the EEOC form attached to it—that he was seeking work throughout the six-year period during which he was allegedly prioritizing his unidentified "health issues." Accepting as true Plaintiff's allegations in his complaint, the attached EEOC form, and even in his opposition

7

papers, Jones has still not plausibly alleged that his poor health rendered him unable to file his EEOC form until years after the 300-day period expired.

Plaintiff also cannot claim the benefits of the so-called "continuing violation doctrine," which sometimes allows plaintiffs who file "a timely EEOC charge about a particular discriminatory act committed in furtherance of an ongoing policy of discrimination extends the limitations period for all claims of discriminatory acts committed under that policy even if those acts, standing alone, would have been barred by the statute of limitations." *Francis*, 372 F. Supp. 2d at 746–47 (citations omitted). This doctrine applies only if "all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 (2002). Meanwhile, "claims of discrete discriminatory or retaliatory acts" must each be exhausted within the requisite 300-day period unless some other tolling doctrine applies. *Id.*; *see also id.* at 113 ("[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges."). Plaintiff's workplace discrimination and post-employment claims comprise distinct federal claims. Thus, although Plaintiff's complaint alleges that the discrimination against him continued for over six years after 2009 through repeated negative references to other potential employers, that allegation is not enough to protect his workplace discrimination claims from dismissal. For all these reasons, the Court grants Defendant's motion to dismiss Plaintiff's federal workplace discrimination claims.

## B. Negative-Reference Claims

Plaintiff's remaining claims are based on the alleged negative references and "slander" that Jones asserts has continued since he stopped working at Bloomingdale's. As an initial matter, any causes of action for slander or other defamation that Plaintiff may have arise under state law rather

than federal law. *See generally Lee v. Healthfirst, Inc.*, No. 04 CIV. 8787 (THK), 2007 WL 634445, at *26 (S.D.N.Y. Mar. 1, 2007) ("[C]ourts routinely dismiss state defamation, libel, and slander claims for want of subject matter jurisdiction once the underlying federal cause of action is no longer alive." (citation omitted)). Here, the Court addresses only Jones's federal Title VII claims based on the allegedly negative references.

Jones's complaint appears to assert that Bloomingdale's continued to discriminate against him on the basis of his race after he left the company. Regardless of whether this claim is construed as a Title VII discrimination claim or Title VII retaliation claim, Plaintiff must allege facts making it plausible that the company's allegedly negative references "were made for retaliatory reasons" or were motivated by discriminatory animus.³ *See Blutreich v. N. Shore-Long Island Jewish Health Sys., Inc.*, No. 13-CV-8583 (DAB), 2015 WL 1515255, at *5 (S.D.N.Y. Apr. 2, 2015); *see also* 42 U.S.C. § 2000e-2(m). He has failed to do so. He has not, for example, alleged any facts about who at Bloomingdale's provided the allegedly negative references or what they said. Nor has he alleged any facts supporting his contention that the speaker or speakers providing the references, whoever they were, expressed negative views of Jones based on discriminatory animus or for retaliatory reasons. The Court thus "has no reason to draw an inference of causation between the allegedly negative references and the protected activity" or between the references and discriminatory animus. *See Blutreich*, 2015 WL 1515255, at *5; *see also Roth v. Farmingdale*

---

³ Courts in this Circuit have upheld retaliation claims under Title VII when a person's former employer provides negative job references in retaliation for activity protected under that statute. *See Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 178–79 (2d Cir. 2005); *see also Thomas v. iStar Fin., Inc.*, 438 F. Supp. 2d 348, 365 (S.D.N.Y. 2006) ("Giving negative references or refusing to give positive references in retaliation for a protected activity has also been considered retaliation in violation of Title VII."). It is less clear whether Plaintiff can assert a Title VII racial discrimination claim on the basis of post-employment conduct, but some courts have permitted similar claims. *See Charlton v. Paramus Bd. of Educ.*, 25 F.3d 194, 198 & n.4 (3d Cir. 1994).

9

*Pub. Sch. Dist.*, No. 14-CV-6668, 2016 WL 767986, at *6 (E.D.N.Y. Feb. 26, 2016) (dismissing *pro se* complaint that was "completely devoid of any factual allegations showing how the defendant's [conduct] was motivated by plaintiff's" protected characteristics). Jones's negative-reference allegations are little more than "speculation premised on . . . [his] alleged inability to find a job" and his assumptions that his prospective employers called Bloomingdale's for a reference and were provided negative ones due to discrimination or retaliation. *See McCalman v. Partners in Care*, No. 01-CV-5844 (FM), 2003 WL 22251334, at *7 (S.D.N.Y. Sept. 30, 2003). Such conclusory and speculative allegations are insufficient to state a claim under Title VII.

## II. Federal Claims for Discrimination on the Basis of Disability

The Court also grants Defendant's request to dismiss Plaintiff's ADA claim. Generally speaking, "[t]he ADA 'prohibits discrimination by covered entities, including private employers, against qualified individuals with a disability.'" *Clark v. Jewish Childcare Ass'n, Inc.*, 96 F. Supp. 3d 237, 248 (S.D.N.Y. 2015) (citation omitted). Yet Jones's complaint and his response to Defendant's motion to dismiss provide no factual allegations whatsoever about what his disability might be, let alone facts supporting an inference that anyone discriminated against him on the basis of such disability. Furthermore, even Jones's own complaint and EEOC Intake Questionnaire appear to undermine his ADA claim: when asked what characteristics he believed were the cause of the alleged discrimination, he did not check the boxes marked "disability." *See* Compl., Dkt. 2 at 3, 10. Plaintiff's complaint thus cannot be construed to state a claim for discrimination on the basis of disability and his ADA claim is dismissed.

## III. State-Law Claims and Leave to Amend

The parties in this action are not diverse, because Plaintiff resides in New York City and Defendant is headquartered there. *See* 28 U.S.C. § 1332(c)(1). Thus, this Court has jurisdiction

over this action only by virtue of Plaintiff's federal claims. *See id.* §§ 1332(a), 1331. Generally speaking, Courts decline to exercise supplemental jurisdiction over state-law claims once all federal claims are dismissed. *See Anegada Master Fund, Ltd. v. PXRE Grp. Ltd.*, 680 F. Supp. 2d 616, 625 (S.D.N.Y. 2010). "In determining whether to continue to retain jurisdiction, district courts consider factors such as judicial economy, convenience, fairness, and comity." *Id.* Here, those factors weigh in favor of declining jurisdiction and dismissing Jones's state-law claims. The Court does so without prejudice.

## CONCLUSION

For the reasons stated above, Defendant's motion is granted as to Plaintiff's federal claims and the Court declines jurisdiction as to Plaintiff's remaining state-law claims. The case is dismissed without prejudice and Jones is granted leave to amend the complaint to correct the deficiencies noted in this memorandum opinion, so long as his amendments are made in good faith.

Plaintiff shall file his first amended complaint no later than April 9, 2018. If Plaintiff fails to do so by that time, this case will be dismissed for failure to prosecute under Federal Rule of Civil Procedure 41.

The Clerk of Court is respectfully directed to terminate the motion pending at Dkt. 11.

SO ORDERED.

Dated: March 8, 2018
         New York, New York

Ronnie Abrams
United States District Judge