USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 11/20/18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DEREK PRESTON JONES,

                Plaintiff,

v.

BLOOMINGDALE'S,

                Defendant.

17-CV-1974 (RA)

MEMORANDUM OPINION AND ORDER

RONNIE ABRAMS, United States District Judge:

    Plaintiff Derek Jones, proceeding *pro se*, brings this suit against Defendant Bloomingdale's, Inc., asserting that Defendant discriminated against him on the basis of his race and sex and retaliated against him for complaining about race discrimination. On March 8, 2018, the Court granted Defendant's motion to dismiss, but in light of Plaintiff's *pro se* status, allowed him leave to file an amended complaint. Plaintiff timely filed an amended complaint, and Defendant now once again moves to dismiss. Defendant's renewed motion is granted, and the case is dismissed with prejudice.

## BACKGROUND

### I. Factual Background

    The following facts are drawn from the amended complaint and the EEOC Intake Questionnaire/Charge that Plaintiff attached to and thus incorporated into his amended complaint, as well as Plaintiff's original complaint.[1] These facts are assumed to be true for the purposes of this motion. *See Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 35 (2d Cir. 2017).

---

[1] Jones attached his original complaint to his amended complaint, and the Court will therefore consider his original complaint as incorporated by reference in his amended complaint. *See Mingues v. Nelson*, No. 96-CV-5396 (GBD), 2004 WL 324898, at *2 (S.D.N.Y. Feb. 20, 2004).

In October 1998, Derek Jones was hired as a sales associate at Bloomingdale's, where he worked until 2009. Am. Compl. at 16-17 (EEOC Charge), Dkt. 22. According to Jones's amended complaint, he never showed up late for work, made half a million dollars for Bloomingdale's in sales, and worked overtime and covered other employees' shifts. Am. Compl. at 9, Dkt. 22. Plaintiff apparently worked at the company without incident for five years. *Id.* at 8.

During his last six years at the company, however, Jones alleges that Bloomingdale's engaged in two separate types of employment discrimination based on Plaintiff's race and sex. As described in Plaintiff's original complaint, the first kind of discriminatory conduct occurred when a woman named Bea Bagdziunas became the head of his store's human resources department. *Id.* at 19 (Orig. Compl.). Jones alleges that Bagdziunas had an issue with him because he was a black male, and "slander[ed] [his] name throughout the store to management and sales associates." *Id.* Jones also asserts that Bagdziunas required Jones to "take a drug test," continually harassed him, forced him to prove that he was an American citizen, and attempted to suspend Plaintiff without pay after he had a disagreement with his supervisor. *Id.* At some point, a manager purportedly told Jones that "they love to destroy brothers," meaning black men. *Id.*

The second instance of racial discrimination that Jones alleges against Bloomingdale's in his amended complaint concerns a personnel file that the company supposedly keeps on every employee. *Id.* at 8. According to Jones, his file includes a statement that he has "hostile body language," which he asserts is a "racial statement and racist term that [] is used to describe black men." *Id.* Jones asserts that Bagdziunas first told him about this description in his personnel file, and informed him that "numerous managers made [a] statement" to her regarding Jones's hostile body language during the course of his employment. *Id.*

On October 8, 2009, Jones was told by his group manager, Jodi Lacritz, to come to her office. *Id.* According to Plaintiff, Lacritz told him that if he was not happy at Bloomindale's he was free to "leave and collect unemployment." *Id.* That same day, Jones resigned from his position at the company. *Id.*

In his amended complaint, Jones further states that, since leaving Bloomingdale's, he has applied for five hundred jobs, and "landed" only one of these. *Id.* Plaintiff attributes his difficulty in finding employment to negative job references by Bloomingdale's employees made in retaliation for him suing Defendant with his "Local 3 union"[2] and for his 2015 filing of an employment discrimination charge against the company with the EEOC (based on the two incidences described earlier). *Id.* In particular, Jones alleges that Bloomingdale's employee Ashley Sluss Holubowicz began slandering him in 2014 and continues to caution prospective employers against hiring him, claiming that she has "slandered [his] name for jobs." *Id.* According to Jones, he did not list Bloomingdale's as a reference with the company that eventually hired him, the jewelry design store Erwin Pearl, which proves that he can obtain a job so long as he does not put Bloomingdale's on his resume. *Id.*

Finally, Jones contends in his amended complaint that white employees who leave Bloomingdale's have not had difficulty finding jobs at Bergdorf Goodman or Saks Fifth Avenue. *Id.* According to Plaintiff, Bloomingdale's has two standards for white and black individuals, and the company does not "slander [white persons'] name[s] and assassinate their character." *Id.* Jones states that he first noticed this problem "when [he] was talking to other form[er] black employees that worked at Bloomingdales," *id.*, who, like him, have had considerable trouble finding employment, *see id.*

---

[2] Jones does not allege when this lawsuit was filed or the basis for bringing it.

## II. Procedural History

On October 28, 2015, Jones completed an EEOC Intake Questionnaire/Charge, in which he indicated that he wanted to file a charge of discrimination on the basis of race against Bloomingdale's. *See* Dkt. 22 at 18 (EEOC Charge). On January 18, 2017, the EEOC provided Jones with a Notice of Dismissal and a Right to Sue letter. *Id* at 13.

On March 7, 2017, Jones filed the instant lawsuit against Bloomingdale's. *See* Orig. Compl., Dkt. 2. In his initial complaint, Jones alleged violations of Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act of 1990, the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"). *Id.* at 2. Jones identified the failure to promote him, unequal terms and conditions of his employment, and harassment as the discriminatory conduct perpetrated by Bloomingdale's. *Id.* at 2-3. Plaintiff further asserted that the alleged discrimination was based on his race, color, and sex. *Id.* at 3.

On March 8, 2018, this Court granted Defendant's motion to dismiss Jones's original complaint. *See Jones v. Bloomingdale's*, No. 17-CV-1974 (RA), 2018 WL 1281819 (S.D.N.Y. March 8, 2018). The Court first observed that Jones had not exhausted his discrimination charge with the EEOC in a timely manner, *see id.* at *3, and had failed to "allege facts 'provid[ing] the Court with some reason to believe that [he] might have been incapable of filing a charge with the EEOC until [he] finally did so.'" *Id.* at *4 (quoting *Mira v. Kingston*, 218 F. Supp. 3d 229, 236-37 (S.D.N.Y. 2016)). In regard to Jones's retaliation claims, the Court concluded that Jones had not "alleged any facts about what" Bloomingdale's employees said, or whether these persons had "expressed negative views of Jones based on discriminatory animus or for retaliatory reasons." *Id.* at *5.[3] For the sake of "judicial economy, convenience, fairness, and comity," the Court then

---

[3] The Court also dismissed Plaintiff's ADA claim, *see Jones*, 2016 WL 1281819, at *5, which is no longer alleged in his amended complaint, *see* Dkt. 22 at 4.

4

declined to exercise supplemental jurisdiction over Jones's state-law claims. *Id.* (quoting *Anegada Master Fund, Ltd., v. PXRE Grp. Ltd.*, 680 F. Supp. 2d 616, 625 (S.D.N.Y. 2010)). In light of Defendant's *pro se* status, the Court nevertheless granted Jones leave to file an amended complaint in order to correct the deficiencies in his pleading. *Id.* at *5-6.

On April 6, 2018, Plaintiff filed an amended complaint. *See* Dkt. 22. In his amended complaint, Jones also alleges that he was discriminated against in violation of 42 U.S.C. § 1981, *id.* at 4, and adds the following details to his race discrimination and retaliation claims (described above):

- Plaintiff claims that Bloomingdale's kept a personal file commenting on his "hostile body language," which he alleges constituted a "racial statement and racist term that is used to describe black men," *id.* at 8;
- Jones asserts that "Bloomindale's has two standards for black and white [persons]," which he says to have learned when talking to other former black male employees of Bloomingdale's, *id.*;
- Plaintiff alleges that he was retaliated against by Bloomingdale's based on his successful suit against the company "with the Local 3 union" and the filing of his EEOC charge, *id.*;
- Jones specifically names Bloomindale's employees Ashley Sluss Holubowicz and Bea Bagdziunas as having slandered him when he applied "for jobs after and up to [the] present," *id.*;
- Plaintiff alleges that Erwin Pearl was the only employer that agreed to give him a job, which was an employer for which Jones did not use Bloomingdale's as a reference. *Id.* Based on this, Jones asserts that when he does not "list Bloomingdale's as a reference [he] can land a job," *id.*; and

5

- Jones lists eighty-five of the five hundred jobs that he claims to have applied for after departing Bloomingdales, and the dates in which he submitted his application to these prospective employers, *id* at 10-12.

Bloomingdale's now moves to dismiss the amended complaint, arguing once again that Jones's claims are unexhausted, untimely, and insufficiently pled. First, Defendant asserts that Plaintiff's § 1981 claim has been brought at least four years after the requisite statute of limitations has expired. Second, Defendant contends that Jones does not allege having engaged in any protected activity while working at Bloomingdale's, and his post-employment retaliation claims must therefore be dismissed as a matter of law. Finally, in the event that the Court exercises supplemental jurisdiction over Plaintiff's state law actions, Defendant urges this Court to dismiss these allegations both for being brought beyond the statute of limitations and for failure to state a claim. In response, Plaintiff repeats the allegations made in his amended complaint.

## LEGAL STANDARD

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

On a Rule 12(b)(6) motion, the question is "not whether [the plaintiff] will ultimately prevail," but rather "whether his complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 529–30 (2011) (internal quotation marks omitted). In answering

this question, the Court must "accept[] all factual allegations as true, but giv[e] no effect to legal conclusions couched as factual allegations." *Stadnick*, 861 F.3d at 35 (quoting *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010)). This Court must construe a *pro se* plaintiff's pleadings liberally. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). But even *pro se* litigants must still "state a claim to relief that is plausible on its face." *Mancuso v. Hynes*, 379 Fed. App'x 60, 61 (2d Cir. 2010) (citations omitted).

## DISCUSSION

### I. Federal Claims for Discrimination on the Basis of Race and Color

Jones asserts that Bloomingdale's violated Title VII, 42 U.S.C. § 1981, and New York State Human Rights Law by harassing him and not promoting him because of his race.[4] He further contends that, after he left Bloomingdale's, Defendant retaliated against him by giving negative job references to prospective employers, which made it difficult for him to find new work.

#### A. Workplace Discrimination under Title VII and 42 U.S.C. § 1981

Title VII of the Civil Rights Act of 1974 makes it unlawful for employers "to discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 20003-2(a). "An employment discrimination claim must be filed with the EEOC within 300 days of the alleged discrimination in a state, like New York, with a fair employment agency." *Francis v. Blaikie Grp.*, 372 F. Supp. 2d 741, 746 (S.D.N.Y. 2005) (citation omitted), *aff'd*, 177 F. App'x 121 (2d Cir. 2006). As discussed in this Court's previous opinion in this case, Jones failed to exhaust his Title VII workplace discrimination claims with the EEOC. *See Jones*, 2018

---

[4] Although in his amended complaint Plaintiff also states that he was discriminated against on the basis of sex, *see* Dkt. 22 at 3, he makes no factual allegations in support of this claim. *See Twombly*, 550 U.S. at 570 (To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face.").

7

WL 1281819, at *3. Moreover, nothing in Jones's amended complaint provides any additional reason for why Jones "might have been incapable of filing a charge with the EEOC until [he] finally did so," *id.* at *4 (quoting *Mira*, 218 F. Supp. at 237), and his requisite time to file such a charge therefore cannot be considered to have been tolled, *see id.*

In his amended complaint, Jones, for the first time, also alleges discrimination under 42 U.S.C. § 1981. Section 1981 guarantees, in relevant part, that "[a]ll persons within the jurisdiction of the United Sates shall have the same right in every State...to make and enforce contracts,...and to the full and equal benefit of all law and proceedings for the security of persons and property as is enjoyed by white citizens." 42 U.S.C. § 1981(a). Depending on the claim at issue, Section 1981 has either a three or four-year statute of limitations period.[5] Regardless of the appropriate limitations period, however, Jones's § 1981 claim for employment discrimination against Bloomingdale's during his time at the company is untimely: Although the allegedly discriminatory conduct occurred, at the latest, up until 2009 (when Jones left the company), Jones failed to bring this claim for another nine years (that is, until the filing of his amended complaint in April of 2018). Furthermore, as with his Title VII claim, Plaintiff also provides no reason in his amended complaint why this period should be tolled.

Nor can Jones salvage his employment discrimination claim, under either § 1981 or Title VII, by relying on Bloomingdale's allegedly discriminatory conduct after he left the company, as some circuits have allowed. *See Charlton v. Paramus Bd. of Educ.*, 25 F.3d 194, 198-99 & n.4 (3d Cir. 1994). Although the Second Circuit has not made clear whether, under either statute,

---

[5] As the Second Circuit explained in *Wright v. City of Ithaca*, 633 Fed. App'x 63, 64 (2d Cir. 2016):

> Section 1981 claims are governed by a four-year statute of limitations "if the plaintiff's claim against the defendant was made possible by" an Act of Congress enacted after December 1, 1990. *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382, 124 S.Ct. 1836, 158 L.Ed.2d 645 (2004). Other § 1981 claims in New York have a three-year limitations period.

8

plaintiffs can assert racial discrimination claims based on a defendant's post-employment conduct, Jones has, in any event, not sufficiently pled that any such racially discriminatory conduct occurred. To satisfy a claim of employment discrimination under both Title VII and § 1981, a plaintiff must demonstrate that "(1) she fell within a protected class under Title VII; (2) she was qualified for the position she held; (3) she was subjected to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination." *Robinson v. Concerta Health Serv., Inc.*, 781 F.3d 42, 45 (2d Cir. 2015). Jones broadly contends that Bloomingdale's employees Holubowicz and Bagdziunas continued to slander him after leaving the company, but nowhere does he allege that such statements were racially motivated. *See Stuart v. Helmsley-Spear, Inc.*, No. 96-CV-2958 (SAS), 1997 WL 345208, at *3 (S.D.N.Y. June 19, 1997) ("Glaringly absent" from the plaintiff's complaint "is any allegation that his discharge was racially motivated. As the complaint does not attribute his termination to racial animus, the fourth element [of a Title VII claim] is not satisfied.").

Plaintiffs may nevertheless raise an inference of employment discrimination under Title VII or § 1981 by showing "disparate treatment—that is, a showing that the employer treated plaintiff less favorably than a similarly situated employee outside his protected group." *Mandell v. Cty. of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003) (internal quotation marks omitted) (analyzing an allegation of disparate treatment under Title VII); *see also Littlejohn v. City of New York*, 795 F.3d 297, 312 (2d Cir. 2015) (analyzing an allegation of disparate treatment under § 1981). Jones's only claim to this effect, however, that Bloomingdale's provided positive job references for white ex-employees but negative references for black ex-employees, "fails to raise even the minimal inference of discriminatory intent needed to survive a motion to dismiss." *Warburton v. John Jay Coll. of Crim. Justice*, No. 14-CV-9170 (JPO), 2016 WL 3748485, at *4 (S.D.N.Y. July 7, 2016).

9

In his amended complaint, Jones does not explain how he was similarly situated to any white employees that left the company, but merely alleges that "other form[er] black employees that worked at Bloomingdale's" told him that ex-employees who were black were treated differently than those who were white. Dkt. 22 at 8. This in itself is not a sufficiently pled allegation. *See, e.g., Yan v. Ziba Mode Inc.*, No. 15-CV-47 (RJS), 2016 WL 1276456, at *5 (S.D.N.Y. Mar. 29, 2016) (although plaintiff alleged that white employees were treated differently than black employees, "the Amended Complaint is otherwise silent as to these comparators and fails to plead any facts regarding how these employees' identities, experience levels, and conduct compared to [p]laintiff's") (internal quotation marks omitted); *Henry v. N.Y.C. Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 409 (S.D.N.Y. 2014) (dismissing a disparate treatment claim as insufficiently pled where the plaintiff did not "identify, let alone describe, any purported comparator").

Finally, Jones asserts that his Bloomingdale's personnel file described him as having "hostile body language," a description which he construes as racist and which he contends was provided to prospective employers. Dkt. 22 at 8. But Jones provides no further support for either contention. "[B]ald assertions," such as these, without setting forth any further facts, cannot "state a claim [for Title VII] under Rule 12(b)(6)." *Gregory v. Daly*, 243 F.3d 687, 692 (2d Cir. 2001) (internal quotation marks omitted); *Eatman v. United Parcel Serv.*, 194 F. Supp. 2d 256, 265 (S.D.N.Y. 2002) (finding that comments referring to an individual which were, on their face, racially neutral, could not "be understood as a reflection of discriminatory animus, at least where there [was] no objective evidence that the speaker perceived the plaintiff's" racial characteristic "as related to his race"); *Lediju v. New York Cit. Dep't of Sanitation*, 173 F.R.D. 105, 114 (S.D.N.Y. 1997) (A plaintiff's "speculation and generalities[] is insufficient" to state a case of Title VII employment discrimination.) (parenthesis and citation omitted).

10

Accordingly, the Court grants Defendant's motion to dismiss Plaintiff's federal workplace discrimination claims.

## B. Retaliation Claims under Title VII and 42 U.S.C. § 1981

In his amended complaint, Jones also alleges that Bloomingdale's retaliated against him. According to Plaintiff, Bloomingdale's first retaliated against him after he "won a case with the Local 3 union against" the company, and then again when he filed his EEOC charge in 2015. Dkt. 22 at 8. In particular, Jones contends that Holubowicz and Bagdziunas continually "slandered" his name to prospective employers,[6] which made it difficult for him to find new work. *Id.*

It is unclear if Plaintiff brings his retaliation claims under Title VII or § 1981. In any event, the Second Circuit has made clear that, at least under Title VII, a negative employment reference can serve as the basis for a retaliation claim. *See Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166 (2d Cir. 2005).[7] To state such a claim, the plaintiff must show (1) "participation in a protected activity known to the defendant"; (2) "an employment action disadvantaging the defendant," and (3) "a causal connection between the protected activity and the adverse employment action." *Feingold v. New York*, 366 F.3d 138, 156 (2d Cir. 2004) (internal quotation marks omitted).

Jones's amended complaint cannot survive the first prong of this analysis. Although, unlike in his initial complaint, Jones specifically identifies Holubowicz and Bagdziunas in his amended complaint as having retaliated against him by providing negative job reviews to prospective employers, Plaintiff does not allege that these individuals were aware either that he

---

[6] As noted in this Court's previous opinion, any causes of action for slander that Plaintiff may have arise under state rather than federal law. *See Jones*, 2018 WL 1281819, at *5. Consequently, the Court only addresses Jones's federal Title VII and Section § 1981 claims.

[7] Although the Second Circuit has not directly addressed whether negative employment references can serve as a basis for a § 1981 claim, this Court assumes for the sake of this motion that such a claim is cognizable. *See Lawson v. New York City Bd. of Educ.*, No. 09-CV-1335 (JSR)(HBP), 2011 WL 5346091 (S.D.N.Y. Aug. 30, 2011), at *14 (assuming such a claim is cognizable under § 1981), *adopted by*, 2011 WL 5346090 (S.D.N.Y. Nov. 4, 2011).

had won a case against Bloomingdale's with his union or that he had filed an EEOC charge. *See Callahan v. Consol. Edison Co., New York*, 187 F. Supp. 2d 132, 138 (S.D.N.Y. 2002) (finding that the plaintiff had failed to satisfy this prong in a retaliation claim where she had not "alleged that [the defendant] had any actual or constructive knowledge of her [protected] complaints"); *Rolle v. Educ. Bus Transp., Inc.*, No. CV 13-1729 (SJF)(AKT), 2014 WL 4662256, at *8 (E.D.N.Y. Aug. 8, 2014), *adopted by*, 2014 WL 4662267 (E.D.N.Y. Sep. 17, 2014) (finding that plaintiff had failed to satisfy this prong in a retaliation claim where she had not "set forth any facts which show that Defendant was aware of Plaintiff's NYSDHR/EEOC complaint"). Indeed, although Jones contends that Bagdziunas began slandering him while he was at Bloomingdale's and Holubowicz started criticizing him to employers in 2014, Plaintiff did not file his EEOC charge until 2015.

Nor does the fact that Jones was not hired by any company for which he listed Bloomingdale's as a reference save his retaliation claim. It is certainly plausible that negative job reviews, if made, might have harmed Jones's chances of finding work. But this in and of itself says nothing about whether these negative reviews were made by Bagdziunas or Holubowicz for retaliatory reasons. Absent "allegations that the allegedly negative references were made for retaliatory reasons, rather than due to [the plaintiff's] actual performance, the Court has no reason to draw an inference of causation between the allegedly negative references and the protected activity." *Bluetreich v. N. Shore-Long Island Jewish Health Sys., Inc.*, No. 13-CV-8583 (DAB), 2015 WL 1515255, at *5 (S.D.N.Y. Apr. 2, 2015).

Accordingly, the Court grants Defendant's motion to dismiss Plaintiff's retaliation claims.

## III. State Law Claims

As explained in the prior opinion, the parties in this action are not diverse, and this Court therefore has jurisdiction over this action only by virtue of Plaintiff's federal claims. *See Jones*, 2018 WL 12812819, at *5. Courts typically refrain from exercising supplemental jurisdiction over state-law claims if all federal claims are dismissed. *See Anegada*, 680 F. Supp. 2d at 625. As before, *see Jones*, 2018 WL 12812819, at *5, for reasons of "judicial economy, convenience, fairness, and comity," *id.*, this Court therefore declines to exercise supplemental jurisdiction and dismisses Jones's state law claims without prejudice.

## IV. Leave to Amend

Generally, "where dismissal is based on a *pro se* plaintiff's failure to comply with pleading conventions, a district court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Henriquez-Ford v. Council of Sch. Supervisors and Administrators*, No. 14-CV-2496 (JPO), 2016 WL 93863, at *2 (S.D.N.Y. Jan. 7, 2016) (internal quotation marks omitted). Ultimately, whether to grant or deny leave to amend is committed to the "sound discretion of the district court," and may be denied when amendment would be futile because the amended pleading would not survive another motion to dismiss. *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).

Here, the Court already provided Jones with an opportunity to amend his complaint. Because the same deficiencies in his original complaint remain in his amended complaint, it does not appear that further amendment would prove productive. *See Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) ("Where it appears that granting leave to amend is unlikely

to be productive…it is not an abuse of discretion to deny leave to amend.") (internal quotation marks omitted). Accordingly, this case is dismissed with prejudice.

## CONCLUSION

For the reasons stated above, the amended complaint is dismissed with prejudice. The Clerk of the Court is respectfully directed to terminate item 23 on the docket and to close the case.

SO ORDERED.

Dated: November 20, 2018
       New York, New York

Ronnie Abrams
United States District Judge